IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America | ) | Cr. No. 6:17-00934-HMH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Peggy Shelton McCarson, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on remand from the United States Court of Appeals for the Fourth Circuit for further consideration of Defendant Peggy Shelton McCarson's ("McCarson") motion for compassionate release. In the remand order, the Fourth Circuit stated that

> [t]he district court considered McCarson's claim that she was eligible for compassionate release based on her diagnosis of chronic lymphocytic leukemia ("CLL"), but it did not consider her claim that she was eligible for compassionate release because her CLL and the failure of her custodial facility to effectively quarantine its inmates increased her susceptibility to COVID-19.

United States v. McCarson, 818 Fed. App'x 272 (4th Cir. Aug. 27, 2020) (unpublished). For the reasons set forth below, the court denies McCarson's motion for compassionate release.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2018, McCarson pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On June 13, 2018, McCarson was sentenced to 180 months' imprisonment as an armed career criminal. McCarson did not appeal her conviction or sentence. McCarson filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which the court denied on May 13, 2020. McCarson appealed the court's order and the Fourth Circuit remanded on August 27, 2020. McCarson, 818 Fed. App'x 272 (4th Cir. Aug. 27, 2020) (unpublished). The court ordered the Government to respond and the

Government filed a supplemental response on September 3, 2020, and an affidavit on September 14, 2020.  (Gov't Supp. Resp., ECF No. 62.); (Gov't Aff., ECF No. 63.)  McCarson filed a reply on September 15, 2020.  (Reply, ECF No. 64.)  This matter is ripe for consideration.

## II. DISCUSSION OF THE LAW

"A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted."  United States v. Edwards, No. 6:17-cr-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020) (citations omitted).  Section 3582(c)(1)(A) provides that the court

> may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The Sentencing Commission's policy statement is contained in the United States Sentencing Guideline ("U.S.S.G.") § 1B1.13.  Section 1B1.13 note 4 states that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community."  Further, U.S.S.G. § 1B1.13 note 1 provides:

> 1. Extraordinary and Compelling Reasons.–Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
> (A) Medical Condition of the Defendant.–
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples

2

> include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is–
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (B) Age of the Defendant.–The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> (C) Family Circumstances.–
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> (D) Other Reasons.–As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The court previously found that McCarson's diagnosis of chronic lymphatic leukemia ("CLL") does not present extraordinary and compelling reasons to reduce her sentence. In her supplemental filing McCarson also alleges that she suffers from hypertension, obesity, and depression. A review of her medical records did not reveal a diagnosis of obesity. However, McCarson has been diagnosed with hypertension and depression. (Gov't Resp. Opp'n (2/25/20 Medical Note), ECF No. 51-7.) McCarson's medical records reflect that her hypertension is controlled with medication. (Id. (4/29/20 Medical Note), ECF No. 51-7. The court finds that these conditions alone and when considered together with her CLL do not establish extraordinary and compelling reasons to reduce her sentence, as hypertension and depression do not significantly increase her risk from COVID-19.

3

The Fourth Circuit remanded this case for the court to further consider whether she was eligible for compassionate release because her CLL and the failure of her custodial facility to effectively quarantine its inmates increased her susceptibility to COVID-19.

As outlined in the Government's response dated September 3, 2020, the Bureau of Prisons has a detailed action plan that it is following to assist in "maintaining safety and security of [its] institutions," which is publicly available at https://www.bop.gov/coronavirus/covid19_status.jsp. The court recognizes that a prison environment presents unique challenges for quarantining inmates.  However, the BOP has taken extraordinary steps to minimize the risk of COVID-19 to the prison population as is outlined in its plan.  Currently, the BOP has significantly modified it operations as follows:

1. Securing all inmates in every BOP institution in their assigned cells/quarters and severely limiting group gatherings.
2. Limiting movement of inmates among the BOP's facilities.
3. Issuing face masks to inmates and staff.
4. Screening every new inmate for COVID-19 and quarantining asymptomatic inmates with risk of exposure and symptomatic inmates as required by CDC.
5. Conducting additional screening of staff in areas with sustained community transmission.
6. Limiting contractor access to BOP facilities to essential services.
7. Suspending volunteer visits.
8. Suspending social and legal visits
9. Utilizing home confinement where appropriate

https://www.bop.gov/coronavirus/covid19_status.jsp.  Further, the facility where McCarson is housed, Federal Prison Camp in Alderson, West Virginia ("FPC Alderson"), is following the BOP's plan and has had no cases of COVID-19 among its staff or inmates.  (Gov't Supp. Resp. (Aff. ¶¶ 3-4), ECF No. 63.)  McCarson is arguably much better protected from exposure to COVID-19 at FPC Alderson than in the community where sustained transmission is occurring. Based on the foregoing, the court finds that McCarson's CLL and FPC Alderson's ability to

effectively quarantine does not increase her susceptibility to COVID-19.  Thus, for all the reasons stated herein and in the court's previous May 13, 2020 order, McCarson has failed to show that extraordinary and compelling reasons exist to support a reduction in her sentence. Currently, there are no COVID-19 cases at FPC Alderson and the BOP has an effective plan for limiting the spread of COVID-19 and effectively quarantining its inmates as necessary.

Moreover, the court reiterates that the 18 U.S.C. § 3553(a)[1] factors do not support a reduction in McCarson's sentence.  McCarson argues that she is not dangerous.  However, the

---

[1] 18 U.S.C. § 3553(a) provides as follows:
(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . ;
(5) any pertinent policy statement--(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

court disagrees. McCarson was sentenced as an armed career criminal in this case. Her crimes are very serious, involving drugs and firearms. McCarson's residence was under surveillance because an informant had identified the residence as being connected to ongoing trafficking of methamphetamine. (PSR ¶ 8.) While under surveillance on January 25, 2017, officers observed McCarson leave her residence in a vehicle and subsequently initiated a traffic stop for speeding. McCarson granted permission to search the vehicle. (Id. ¶ 8.) Officers located a loaded firearm and drugs in the vehicle, which McCarson admitted belonged to her. (Id. ¶ 8.) In addition, in a subsequent search of her residence pursuant to a search warrant, officers recovered an additional loaded firearm and drugs. (Id. ¶ 9.) Further, McCarson has a significant criminal record including convictions for forgery, domestic violence, malicious damage to property, fraudulent checks, armed robbery, and breach of trust. Moreover, McCarson previously served over 15 years in prison on these prior convictions, which clearly did not serve as a deterrent to her continued criminal conduct. With respect to McCarson's three prior armed robbery convictions, she was incarcerated on June 20, 1998, and was released from custody on December 14, 2014. (PSR ¶¶ 22, 23, 26.) McCarson's community supervision expired on December 30, 2016, and she wasted no time returning to her criminal endeavors as she was arrested in the instant case on January 25, 2017. (Id.) McCarson's conduct reflects a total lack of respect for the law. The only conclusion that can be drawn from the record in this case based on McCarson's history and characteristics and the nature and circumstances of the offense is that McCarson is a dangerous person who utilizes loaded firearms in her criminal activities. The court must protect the public from further crimes by McCarson. Further, McCarson has only served a fraction of her 180-month sentence. Having considered the § 3553(a) factors

enumerated, the court finds that the existing 180-month sentence promotes respect for the law, deters crime, and protects the public, and is "sufficient, but not greater than necessary." For all the reasons set forth above and in the court's previous May 13, 2020 order, McCarson's motion for compassionate release, docket number 44, is denied.

    **IT IS SO ORDERED.**

                                                      s/Henry M. Herlong, Jr.
                                                      Senior United States District Judge

September 21, 2020
Greenville, South Carolina